IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Kent E. Hovind, | ) | C/A No. 0:13-1177-MGL-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| William G. Anderson, John Doe, Mr. Dial, 3 Unknown Named John Jane Doe BOP Employees, | ) ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

The plaintiff, Kent E. Hovind ("Hovind"), a self-represented federal prisoner, filed this action pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971),[1] alleging violations of his civil rights. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on a motion to dismiss filed by Defendants Anderson and Dial. (ECF No. 22.)  Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the court advised Hovind of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the defendants' motion. (ECF No. 23.)  Hovind responded. (ECF No. 25.)  Having reviewed the parties'

---

[1] Bivens establishes as a general proposition that victims of a constitutional violation perpetuated by a federal actor may sue the offender for damages in federal court despite the absence of explicit statutory authorization for such suits. Carlson v. Green, 446 U.S. 14, 18 (1980); see also Holly v. Scott, 434 F.3d 287, 289 (4th Cir. 2006). A Bivens claim is analogous to a claim brought against state officials under 42 U.S.C. § 1983. Therefore, caselaw involving § 1983 claims is applicable in Bivens actions, and vice versa. See Harlow v. Fitzgerald, 457 U.S. 800, 814-20, n.30 (1982); see also Farmer v. Brennan, 511 U.S. 825 (1994).

Page 1 of  11
*PJG*

submissions and the applicable law, the court finds that the defendants' motion should be granted and this matter should be dismissed.[2]

## BACKGROUND

Liberally construed, Hovind's Complaint essentially alleges that his constitutional rights were violated when the defendants withheld his legal documents, causing him to miss a court deadline in his criminal case.

## DISCUSSION

**A.    Rule 12(b)(6)**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) examines the legal sufficiency of the facts alleged on the face of the plaintiff's complaint. Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). A claim is facially plausible when the factual content allows the court to reasonably infer that the defendant is liable for the misconduct alleged. Id. When considering a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint. Erickson v. Pardus, 551 U.S. 89, 94 (2007). A court may consider "documents attached or incorporated into the complaint" without converting a motion to dismiss into

---

[2] It appears that Defendants John Doe and the "3 Unknown Named John Jane Doe BOP Employees" were never served with process. Accordingly, the court recommends that these defendants be dismissed from this action without prejudice. See Fed. R. Civ. P. 4(m). Moreover, for the reasons discussed below, Hovind cannot show that these defendants violated his constitutional rights.



a motion for summary judgment. E.I. du Pont de Nemours and Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011). Further, "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed." Witthohn v. Fed. Ins. Co., 164 F. App'x 395, 396-97 (4th Cir. 2006) (citing Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st 2001); Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999) (permitting consideration of extraneous material if such materials are "integral to and explicitly relied on in the complaint"); Gasner v. Dinwiddie, 162 F.R.D. 280, 282 (E.D. Va. 1995) (permitting district court to take judicial notice of public documents, such as court records, even when the documents are neither referenced by nor integral to plaintiff's complaint)). Moreover, dismissal under 12(b)(6) based on the defense of *res judicata* is proper unless a disputed issue of material fact exists. See Andrews v. Daw, 201 F.3d 521, 524 (4th Cir. 2000).

In applying this standard, the court observes that it is required to liberally construe *pro se* complaints. Erickson v. Pardus, 551 U.S. 89, 94 (2007). Such *pro se* complaints are held to a less stringent standard than those drafted by attorneys, id.; Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), and a federal district court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case. Hughes v. Rowe, 449 U.S. 5, 9 (1980); Cruz v. Beto, 405 U.S. 319 (1972). When a federal court is evaluating a *pro se* complaint, the plaintiff's factual allegations are assumed to be true. Erickson, 551 U.S. at 93. The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so; however, a district court may not rewrite a complaint to include claims that were never presented, Barnett v. Hargett, 174 F.3d 1128 (10th Cir. 1999), construct the plaintiff's legal arguments for him,



Small v. Endicott, 998 F.2d 411 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court, Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

**B.**     ***Res Judicata***

The defendants first argue that the allegations in this matter are barred by the doctrine of *res judicata*, specifically claim preclusion. See Taylor v. Strugell, 553 U.S. 880, 892 (2008) (stating that "claim preclusion and issue preclusion . . . are collectively referred to as 'res judicata' "). "For the doctrine of res judicata to be applicable, there must be: (1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and later suit; and (3) an identity of parties or their privies in the two suits." Pueschel v. United States, 369 F.3d 345, 354-55 (4th Cir. 2004). For purposes of claim preclusion, the cause of action prong is defined by asking whether the claim presented in the new litigation " 'arises out of the same transaction or series of transactions as the claim resolved by the prior judgment.' " Pittston Co. v. United States, 199 F.3d 694, 704 (4th Cir. 1999); see also Peugeot Motors of Am., Inc. v. Eastern Auto Distribs., Inc., 892 F.2d 355, 359 (4th Cir. 1989) ("Not only does res judicata bar claims that were raised and fully litigated, it 'prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding.' ") (quoting Brown v. Felsen, 442 U.S. 127, 131 (1979)).

The defendants rely on Hovind's litigation in Hovind v. United States, C/A No. 0:12-1594-SB ("Hovind I") in arguing that *res judicata* applies. In Hovind I, Hovind raised a claim pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346, alleging that employees at FCI-Edgefield were negligent in delaying the mailing of a box of his legal materials which he alleged prevented him from asserting a colorable claim for relief pursuant to 28 U.S.C. § 2255. After the United States filed a motion to dismiss and Hovind failed to respond to the motion despite being warned of the

consequences of failing to respond, Hovind I was ultimately dismissed for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

Even assuming that the defendants satisfy the first two elements for *res judicata* to apply, they have failed to demonstrate or even argue application of the third element. The court observes that the defendant in Hovind I was the United States, while in the present action Hovind is suing individual defendants in their *individual capacities*, not in their official capacities, and therefore they are not in privity with each other. See Andrews v. Daw, 201 F.3d 521, 524-26 (4th Cir. 2000) (holding that "a government employee in his official capacity is not in privity with himself in his individual capacity for purposes of res judicata"); Thurston v. United States, 810 F.2d 438, 444-45 (4th Cir. 1987) ("Res judicata bars subsequent litigation against federal officials sued in their official capacity when the United States has won on the same issue in a previous suit."); cf. Taylor v. Sturgell, 553 U.S. 880 (2008) (discussing exceptions to the general rule against nonparty claim preclusion). Therefore, the court concludes that dismissal based on *res judicata* is not warranted.

**C.     Exhaustion of Administrative Remedies**

The defendants next argue that dismissal is warranted because Hovind failed to exhaust his administrative remedies with regard to any of the claims set forth in his Complaint. A prisoner must exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), specifically 42 U.S.C. § 1997e(a). Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). To satisfy this requirement, a

plaintiff must avail himself of every level of available administrative review. See Booth v. Churner, 532 U.S. 731 (2001). Those remedies neither need to meet federal standards, nor are they required to be plain, speedy, and effective. Porter, 534 U.S. at 524 (quoting Booth, 532 U.S. at 739). Satisfaction of the exhaustion requirement requires "using all steps that the agency holds out, and doing so *properly*." Woodford v. Ngo, 548 U.S. 81, 90 (2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). Thus, "it is the prison's requirements, and not the [Prison Litigation Reform Act], that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007). The defendants have the burden of establishing that a plaintiff failed to exhaust his administrative remedies. Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 683 (4th Cir. 2005).

The Federal Bureau of Prisons ("BOP") has a multi-tiered administrative grievance process. See 28 C.F.R. §§ 542.10, et seq. An inmate may first seek to informally resolve his complaint by filing Form BP-8, and if the matter cannot be resolved informally, the inmate must file a formal written "Administrative Remedy Request" (Form BP-9) within twenty calendar days following the date on which the basis for the complaint occurred. 28 C.F.R. §§ 542.13, 542.14(a). If the inmate is dissatisfied with the response, he may appeal the decision to the Regional Director within twenty calendar days of the date of the Warden's response by filing Form BP-10. 28 C.F.R. § 542.15. Finally, the inmate may appeal this decision to the General Counsel within thirty calendar days of the Regional Director's response by filing Form BP-11. Id.

"[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). However, "a prisoner does not exhaust all available remedies simply by failing

to follow the required steps so that remedies that once were available to him no longer are." Id. at 725 (citing Woodford, 548 U.S. 81).

In this case, the defendants have provided the Administrative Remedy Generalized Retrieval Log that they argue reflects that Hovind "has filed a total of eighteen (18) administrative remedies and administrative remedy appeals during his incarceration" and that "[n]one of the administrative remedies or administrative remedy appeals filed by Mr. Hovind involve the subject of unreasonable seizure of his personal property, interference with his right to access the courts, or deprivation of his personal property." (Lathrop Aff. ¶¶ 5, 6, ECF No. 22-1 at 2; see also Attach. A, ECF No. 22-1 at 3-11.)

In response to the defendants' motion, Hovind appears to argue that the administrative remedies were not available to him and that he was prevented from exhausting his administrative remedies. Specifically, Hovind argues that while he was preparing his § 2255 motion at FCI-Edgefield, he was placed in the Segregated Housing Unit without warning and then transferred to a new facility without his legal boxes. Hovind alleges that staff at the new facility "refused to provide the plaintiff a BP-8 or BP-9 to make an inmate request because he was told he is no longer an inmate at Edgefield and therefore the administrative grievance procedure for Edgefield is no longer available to the plaintiff." (ECF No. 25 at 2.) The defendants have not responded to this assertion.

In light of this dispute, the court cannot recommend that this action be dismissed at this time for failure to exhaust administrative remedies. See Moore, 517 F.3d at 725 (recognizing the rule that an administrative remedy is not available if a prisoner, through no fault of his own, is prevented from availing himself of it); see also Hill v. O'Brien, 387 F. App'x 396, 400 (4th Cir. 2010) (stating that "the district court is 'obligated to ensure that any defects in exhaustion were not procured from the

action or inaction of prison officials' ") (quoting Aquilar-Avellaveda v. Terrell, 478 F.3d 1223, 1225 (10th Cir. 2007)).

**D.     Qualified Immunity**

Finally, the defendants argue that they are entitled to qualified immunity on Hovind's claims. Qualified immunity shields governmental officials performing discretionary functions from liability for damages to the extent that their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). To resolve a qualified immunity defense, the court must (1) determine whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) determine whether the right was clearly established at the time of the alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 231-32 (2009). Courts may address the two prongs of the qualified immunity analysis in whichever order is appropriate in light of the circumstances of the particular case at hand. Id. at 235, 242.

In this case, the defendants argue that they are entitled to qualified immunity because it is clear that they did not violate any of Hovind's constitutional rights.

**Access to the Courts.**  It is well established that prisoners have a constitutional right of access to the courts. Bounds v. Smith, 430 U.S. 817 (1977). In Bounds, the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Id. at 828. To state a cognizable claim for denial of meaningful access to the courts a prisoner must allege a specific, actual injury resulting from the alleged denial. Lewis v. Casey, 518 U.S. 343, 351-52 (1996); Cochran v. Morris, 73 F.3d 1310 (4th Cir. 1996). The Lewis Court further explained that



> the injury requirement is not satisfied by just any type of frustrated legal claim. Nearly all of the access-to-courts cases in the Bounds line involved attempts by inmates to pursue direct appeals from the convictions for which they were incarcerated, or habeas petitions. In Wolff v. McDonnell, 418 U.S. 539 (1974), we extended this universe of relevant claims only slightly, to "civil rights actions"—i.e., actions under 42 U.S.C. § 1983 to vindicate "basic constitutional rights."

Lewis, 518 U.S. at 354 (internal citations omitted); see also Christopher v. Harbury, 536 U.S. 403, 414-15 (2002) (stating that "the very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong").

Specificity is required in pleading a denial of access to the courts claim. Cochran, 73 F.3d at 1317. Moreover,

> the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation. It follows, too, that when the access claim (like this one) looks backward, the complaint must identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought. There is, after all, no point in spending time and money to establish the facts constituting denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element.

Christopher, 536 U.S. at 415.

As an initial matter, to the extent that Hovind's claim rests on negligent conduct by the defendants as previously declared in Hovind I, such allegations are insufficient to state a claim of denial of access to the courts. See Pink v. Lester, 52 F.3d 73 (4th Cir. 1995) (holding that negligent denial of access to the courts is not actionable under § 1983). Additionally, although Hovind suggests that the defendants' actions prevented him from timely filing his § 2255 petition, he fails to identify any claim that would have resulted in the overturning of his conviction. Review of the filings and rulings in the § 2255 action at issue, see United States v. Hovind, 3:06-83-MCR-EMT (N.D. Fl.), reveal that Hovind ultimately presented his arguments regarding the delay of his legal



boxes to the district court in support of requests for relief. Therefore, the court concludes that the defendants are entitled to qualified immunity on Hovind's access to the courts claim.

**Other Claims.** Similarly, Hovind has failed to state a claim for relief for the alleged temporary deprivation of his property and the defendants are entitled to qualified immunity on this claim. See Daniels v. Williams, 474 U.S. 327, 331-34 (1986) (indicating that loss of property caused by negligence of prison officials is not a deprivation within the meaning of the Due Process Clause); Hudson v. Palmer, 468 U.S. 517, 525-26 (1984) (indicating that the prohibition under the Fourth Amendment against unreasonable searches and seizures does not apply to prison cells because "[t]he recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions").

## RECOMMENDATION

For the foregoing reasons, the court recommends that the defendants' motion to dismiss be granted. (ECF No. 22.)

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

March 6, 2014
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).